# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID M. MURRAY, | ) |
| Petitioner, | ) ) ) ) |
| v. | ) Case No. 10-cv-0099-MJR |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

**I.  Introduction and Background**

Before this Court is David M. Murray's petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, filed February 5, 2010. The United States filed a response on October 8, 2010. Murray filed a reply on February 28, 2011, which the Court will consider to the extent that it is on point with the arguments properly raised in Petitioner's initial Section 2255 motion. Analysis begins with an overview of the history of the underlying criminal case, *United States v. Murray* (Case No. 3:07-cr-30087-08-MJR).

Murray was a methamphetamine user, who obtained methamphetamine from co-defendants Thomas Wilkerson and Randy Brown, who were methamphetamine manufacturers. Murray joined the conspiracy to manufacture and distribute methamphetamine by obtaining pseudoephedrine tablets, a necessary precursor chemical for the manufacture of methamphetamine, and trading those tablets to Thomas Wilkerson, Randy Brown and others in exchange for cash and quantities of methamphetamine.

1

On July 25, 2008, a grand jury returned a two-count indictment against Murray and others. Count 1 charged all of the defendants with conspiracy to manufacture, distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Murray was not named in Count 2. Murray was arrested on August 1, 2008, and was released on bond with conditions.

On September 23, 2008, Murray participated in a proffer interview, which went nowhere. On September 30, 2008, the government filed a notice seeking enhanced penalties, pursuant to 21 U.S.C. § 851, based upon Murray having a prior drug felony conviction. By virtue of the notice, Murray was facing a minimum mandatory sentence of 20 years' imprisonment.

On October 24, 2008, Murray pleaded guilty to Count 1, as charged, without any plea agreement. The government withdrew its Section 851 notice. Under the U.S. Sentencing Commission Guideline Manual, which was used in an advisory manner, the sentencing range was 120 months to 135 months of imprisonment. On February 20, 2009, Murray was sentenced to a term of 124 months' imprisonment, a $750.00 fine, and 5 years' supervised release. Murray did not file a direct appeal. On February 5, 2010, Murray timely filed the instant Motion.

## II. <u>Analysis of Section 2255</u>

### A. <u>Applicable Legal Standard</u>

28 U.S.C. § 2255 authorizes a federal prisoner to ask the sentencing court to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the Constitution or laws of the United States, ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law."

Relief under Section 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, Section 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. ***See, e.g., Corcoran v. Sullivan*, 112 F.3d 836, 837 (7th Cir. 1997) (Section 2255 relief is available only to correct "fundamental errors in the criminal process").** Section 2255 has been described as "the federal-prisoner substitute for habeas corpus." ***U.S. v. Boyd*, 591 F.3d 953, 955 (7th Cir. 2010). *Accord Washington v. Smith*, 564 F.3d 1350, 1351 (7th Cir. 2009) (referring to a Section 2255 petition as "the federal prisoner's equivalent to a Section 2254 petition attacking a criminal judgment entered by a state court").**

As the Seventh Circuit has declared, Section 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." ***Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation omitted). *Accord Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations").** Section 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues already raised on direct appeal. ***Coleman v. United States*, 318 F.3d 754, 760 (7th Cir.), *cert. denied*, 540 U.S. 926 (2003). *Accord Sandoval v. United States,* 574 F.3d 847, 850 ("claims cannot be raised for the first time in a § 2255 motion if they could have been raised at trial or on direct appeal").**

Murray asserts (4) four, principal arguments in support of his Section 2255 motion:

> (1) his guilty plea was unlawfully induced, involuntary, and unknowingly entered because he did not understand the nature of the charges or the consequences of the plea because he was an admitted drug user and he was incoherent throughout most of the proceedings;

3

(2) his conviction was obtained in violation of his right against self-incrimination;

(3) his counsel was ineffective in failing to object when the Court adjudged Murray guilty where Murray had only minimal participation in the offense and was of diminished capacity, counsel failed to object to prosecutorial misconduct, and counsel failed to call witnesses on his behalf and convinced him not to testify;

(4) he was denied his right of appeal, because counsel did not offer to appeal or inform him of his appeal rights.

### B. The Guilty Plea

Murray claims that his guilty plea was unlawfully induced, involuntary and unknowingly entered because he had a diminished capacity to understand the nature of the charges or the consequences of the plea as a result of his drug habit. The record does not support Murray's argument.

Murray's attorney, William A. Shirley, has submitted an affidavit denying that Murray was incoherent:

> I was present with Mr. Murray during the change of plea and am aware of nothing to suggest that Mr. Murray was in any manner unlawfully induced to plead guilty, he appeared to have, and acknowledged having, a full understanding of the charges and potential penalties, and his plea was voluntarily made. Mr. Murray was coherent during the guilty plea proceeding and his answers to questions were coherent, made sense, and were appropriate. Under questioning by the court during his change in plea, Mr. Murray stated that he was "supposed to take Ziprexa (phonetic), but I haven't been." He further stated that he was not taking any medicines at the time of the change of plea and that he was thinking clearly at that time. (Transcript of Change of Plea, October 24, 2008, at p. 4) Furthermore, the Presentence Investigation Report states at Paragraph 8 that "[a]ll of the urine samples submitted by the defendant were tested and found negative for drug use."

**Government Exh. C, Shirley Aff. ¶ 3.**

Additionally, this Court in accordance with Federal Rule of Criminal Procedure 11, addressed Murray in open court to make certain his decision to plead guilty was "knowing, voluntary and not the product of coercion, duress, undue influence, pressure or physical violence

of an kind" (Government Exh. A, Transcript of Change of Plea [hereinafter "T.Plea"], 3:18-20) and that he understood the nature of the charge and the rights he was giving up by pleading guilty. Murray indicated that he understood the charge against him and had gone over it with his attorney, that he had discussed potential defenses and potential courses of action in the case with his attorney, and that he was fully satisfied with counsel. **Government Exh. A, Transcript of Change of Plea 4:15-13:14.** Further, this Court specifically addressed Murray's drug use prior to accepting his change of plea:

> Q. Have you been treated in the past six months for any addictions to alcohol or medicines or drugs of any kind?
>
> A. No. I am supposed to take Ziprexa (phonetic)[1], but I haven't been.
>
> Q. Have you been treated for any mental disorders or defects of any kind other than the issues that we discussed yesterday in your competency hearing? I am well aware of your current condition.
>
> A. Just been on different medications from the doctors for depression and that in the past.
>
> Q. Okay. Are you taking any medicines right now?
>
> A. No, sir.
>
> Q. As you stand before me, are you thinking clearly?
>
> A. Yes, sir.

**Government Exh. A, Transcript of Change of Plea, 4:1-14.**

Murray's colloquy with the Court and his attorney's affidavit clearly belie Murray's assertion that he had a diminished mental capacity. Statements made under oath during a plea colloquy are presumed to be true. ***U.S. v. Chapa*, 602 F.3d 865, 869 (7th Cir. 2010); *U.S. v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998).**

---

[1] Zyprexa (olanzapine) is typically prescribed for Schizophrenia, Bipolar I Disorder and, in combination with fluoxetine, for treatment-resistant Depression. www.zyprexa.com.

### C. Self-Incrimination

Murray claims that his conviction was obtained in violation of his right against self-incrimination. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." **U.S. CONST. Amend. V.**

First, Murray attempts to invoke his right against self-incrimination as to information provided by others against him. Murray cites to *U.S. vs. Mabrook*, 301 F.3d 503 (7th Cir. 2002), but the case fails to further Murray's argument. *Mabrook* dealt with the question of whether a criminal defendant could compel a potential witness to testify, when that potential witness has indicated that he would invoke his own Fifth Amendment privilege against self-incrimination. **301 F.3d at 506.** The appellate court found that a defendant's Sixth Amendment right to the compulsory process does not trump a witness's Fifth Amendment right against self-incrimination. *Id.* **at 506.** *Mabrook* says nothing to the effect that the Fifth Amendment privilege against self-incrimination can be used by a defendant to bar a witness from testifying against a criminal defendant.

Murray also makes a non-specific Fifth Amendment argument pertaining to his failed proffer. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that absent other measures to protect the Fifth Amendment privilege against self-incrimination, a person in custody must be warned prior to interrogation that he has certain rights, including the right to remain silent. **384 U.S. at 467-473.** Murray does not claim that he was not given such warnings. Murray, having failed to raise his Fifth Amendment privilege against self-incrimination after having been properly informed of his rights, cannot retroactively raise it in a Section 2255 motion. ***See Sandoval v. United States*, 574 F.3d 847, 850 ("claims cannot be raised for the first time in a § 2255 motion if they could have been raised at trial or on direct appeal").**

6

Additionally, participation in the proffer interview, does not obligate the Government to successfully negotiate a plea agreement. **United States v. Hall, 212 F.3d 1016, 1022 (7th Cir. 2000) ("successful negotiation of a plea agreement involves factors ... including the cooperation of [the defendant], clearly absent here, as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement").**

D.   <u>Ineffective Counsel</u>

Murray complains that his counsel was ineffective. The Sixth Amendment to the United States Constitution accords criminal defendants the right to effective assistance of counsel. *Wyatt v. U.S.*, **574 F.3d 455, 457 (7th Cir. 2009) (*citing Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009)),** *cert. denied*, **130 S. Ct. 1925 (2010).** To prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: (a) that his attorney's performance was objectively unreasonable; *and* (b) that he (the defendant/petitioner) suffered prejudiced as a result of this constitutionally deficient performance. *Strickland v. Washington*, **466 U.S. 668, 687 (1984);** *U.S. v. Peleti,* **576 F.3d 377, 383 (7th Cir. 2009);** *Wyatt*, **574 F.3d at 457-58.**

This first requirement of this dual test is referred to as "the performance prong" and the second as the "prejudice prong." As to the performance prong, a Section 2255 petitioner must overcome a "strong presumption that [his] counsel's conduct falls within the wide range of reasonable professional assistance." *Wyatt*, **574 F.3d at 458 (*quoting Strickland*, 466 U.S. at 687-88).** He must establish the specific acts or omissions he claims constitute ineffective assistance, and the Court then assesses whether those acts or omissions are outside the scope of reasonable legal assistance. *Id. See also U.S. v. Acox*, **595 F.3d 729, 734 (7th Cir. 2010) (explaining that deciding "whether counsel's services were beneath the constitutional floor**

**requires consideration of what counsel did, as well as what he omitted"** (*citing Williams v. Lemmon*, 557 F.3d 534 (7th Cir. 2009))).

Evaluation of counsel's performance is highly deferential. The Court presumes reasonable judgment by counsel and must not second-guess counsel's strategic choices or "tactical decisions." *Valenzuela v. U.S.*, 261 F.3d 694, 699 (7th Cir. 2003). Moreover, the Court must "consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, ... [applying] a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Id.*

As to the prejudice prong, the defendant/petitioner must demonstrate a reasonable probability that, *but for counsel's errors,* the result of the proceeding would have been different. **U.S. v. McKee, 598 F.3d 374, 385 (7th Cir. 2010).** The inquiry focuses on whether counsel's errors rendered the proceedings "fundamentally unfair or unreliable." *Valenzuela*, **261 F.3d at 699.**

Murray claims that his counsel failed to object when the Court adjudged him guilty, because he had "only minimal participation in the offense" and was a "drug addict with diminished capacity." Murray's counsel, Mr. Shirley, states that he did not believe his client would qualify as a "minimal participant," as co-defendants Randy Brown and Thomas Wilkerson had provided testimony that Murray was responsible for more than 500 grams of methamphetamine. **Government Exh. C, Shirley Aff. ¶ 4.** As stated previously, this Court presumes reasonable judgment by counsel and may not second-guess counsel's strategic choices or tactical decisions. *Valenzuela*, **261 F.3d at 699.** Further, minimal participation in a crime and drug addiction (in and of itself), do not excuse criminal conduct; rather, they are merely factors that the Court may take into account in sentencing a defendant.

Murray claims that his counsel failed to object to prosecutorial misconduct, failed to call witnesses, and convinced him not to testify. These accusations essentially amount to claiming that his counsel was ineffective because Murray, with the advice of counsel, pleaded guilty. Again, this Court presumes counsel used reasonable judgment, and the Court may not second-guess counsel's strategic choices or tactical decisions. *Id.* Even if the Court were to second-guess counsel's strategic choices, the decision to encourage a guilty plea falls squarely within the wide range of reasonable trial strategies, particularly considering that the government had filed a notice seeking enhanced penalties pursuant to 21 U.S.C. § 851, based upon Murray's prior felony drug conviction. Additionally, Murray's claim fails because he does not establish prejudice. He does not say what witnesses he would have called, or how they would have testified. Further, he does not establish how such testimony would have changed the outcome of the proceeding. Finally, while Murray complains that he was convinced not to testify, he did testify on his own behalf at his sentencing hearing. **Government Exh. B, Transcript of Sentencing, 35:23-38:3.**

E. **Right of Appeal**

Finally, Murray claims that he was denied his right of appeal, because counsel did not offer to appeal or inform him of his right of appeal. The Constitution does not require a lawyer to advise his client of the right to appeal. ***See Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994).** "That duty rests principally on the judge." *Id.* The record is clear that this Court did advise Murray of his right to appeal at the time of sentencing:

> Each of you has a right to appeal the sentence that I ultimately give you, as well as your conviction or guilty plea. Those of you who have entered into a plea agreement, that is all except Mr. Murray, may have waived or given up your right to appeal the sentence that I give you as long as I sentence you within the guideline range. . . Any appeal, whether it is to the sentence give you or your

9

conviction, or both, must be filed within ten days of me entering judgment in your case or your rights of appeal are gone forever.

* * *

When we have concluded your individual sentencings, if you or your attorney ask me, I will enter a Notice of Appeal for you when I enter judgment in your case so you don't have to do that. If you don't ask me to do that, I will not enter Notice of Appeal for you, and then if you want to appeal, you must notify your attorney within that ten day time frame and in such time that he has the ability to file the Notice of Appeal within ten days of me entering judgment.

**Government Exh. B, Transcript of Sentencing, 10:20-25.**

Following pronouncement of Murray's sentence, the Court again offered to file a Notice of Appeal on Murray's behalf:

The Court: Mr. Murray, do you want me to file Notice of Appeal on your behalf?

Mr. Murray: No.

The Court: I am sorry?

Mr. Murray: No.

The Court: I won't file one for you. If you change your mind, make sure Mr. Shirley knows in the ten day time frame and in enough time he can get it on file for you.

**Government Exh. B, Transcript of Sentencing, 53:10-17.**

### III. Conclusion

For all the stated reasons, David M. Murray's petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED** in all respects.

**IT IS SO ORDERED.**

**DATED: April 25, 2011**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**